UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No.: 1:23-cr-00108-TSC |
| : | |
| MICHAEL JOHN DILLON, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE
CERTAIN IMPROPER DEFENSE ARGUMENTS**

The government requests that the Court issue an order precluding defendant Michael John Dillon from (1) arguing a public-authority defense; (2) arguing an entrapment-by-estoppel defense; (3) otherwise raising any affirmative "mistake of law" defense, as previewed in Dillon's motion *in limine* at ECF No. 35. Dillon states, in ECF No.35, that his "reliance on instructions by the President of the United States is an affirmative defense." Dillon does not cite any authority for this claim or explain further, but captions the motion as a "motion *in limine* regarding mistake of law." ECF No. 35 at 1. While the motion does not move this Court for any relief, it does assert that "Dillon has a right to present evidence supporting this defense." *Id.* at 2. He does not.

**FACTUAL BACKGROUND**

On January 6, 2021, Dillon attended the former president's Stop the Steal rally at the Ellipse. At the conclusion of the rally, the crowd—including Dillon—began to walk towards the U.S. Capitol. After approaching the Capitol, Dillon entered the building through a broken window and remained inside for about five minutes.

Dillon is now charged with four crimes relating to Congress's meeting at the United States Capitol on January 6, 2021, to certify the Electoral College vote for president: entering and remaining in a restricted building or grounds (18 U.S.C. § 1752(a)(1)); disorderly or disruptive

1

conduct in a restricted building or grounds (18 U.S.C. § 1752(a)(2)); disorderly and disruptive conduct in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress or either House of Congress (40 U.S.C. § 5104(e)(2)(D)); and parading, demonstrating, and picketing in a Capitol Building (40 U.S.C. § 5104(e)(2)(G)).

## LEGAL STANDARD

### (1) Public-Authority Defense

"The public authority defense allows the defendant to seek exoneration based on the fact that he reasonably relied" on the "actual authority of a government official to engage him" in criminal activity. *United States v. Fulcher*, 250 F.3d 244, 253-54 (4th Cir. 2001) (cleaned up). "The public authority defense is narrowly defined." *United States v. Navarro*, 22-cr-200 (APM), 2023 WL 371968, at *15 (D.D.C. Jan. 19, 2023) (quoting *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015)). To that end, a defendant "will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites." *Id.*[1]

First, "a federal law enforcement officer must have actually authorized the defendant to commit the particular criminal act at issue, and the defendant must have reasonably relied on that authorization when engaging in that conduct." *Navarro*, 2023 WL 371968, at *15 (quoting *Alvarado*, 808 F.3d at 484). A defendant must show "that a government official affirmatively communicated to the defendant the official's approval of the conduct at issue," *Alvarado*, 808 F.3d at 485; *see also Sheppard*, 2022 WL 17978837 at *9 (describing as "undisputed" the element that

---

[1] "[T]he D.C. Circuit has not articulated in a binding opinion either the elements of the [public-authority defense (and its close cousin, entrapment by estoppel)] or the procedure by which a court should consider them." *United States v. Sheppard*, CR 21-203 (JDB), 2022 WL 17978837, at *7 (D.D.C. Dec. 28, 2022). However, for the reasons set forth herein, the Court need not determine the precise contours of the defense to find that the evidentiary basis for the defense is lacking here. *See id.* at *8.

a defendant must rely on a conclusion or statement of law by the relevant official").

Second, "the government official on whom the defendant purportedly relied must have actually had the authority to permit a cooperating individual to commit the criminal act in question." *Navarro*, 2023 WL 371968, at *15 (quoting *Alvarado*, 808 F.3d at 484). Indeed, "[t]he validity of this defense depends upon whether the government agent in fact had authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the 'public authority.'" *United States v. Burrows*, 36 F.3d 875, 881-82 (9th Cir. 1994) (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)).

The circuit courts that have considered this issue are unanimous in requiring actual—not apparent—authority. *See Fulcher*, 250 F.3d at 254 ("we adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official"); *United States v. Sariles*, 645 F.3d 315, 318-19 (5th Cir. 2011) ("we hold that the public authority defense requires the defendant reasonably to rely on the actual, not apparent, authority"); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999), abrogated on other grounds by *Honeycutt v. United States*, 581 U.S. 443 (2017); *United States v. Holmquist*, 36 F.3d 154, 161 nn. 6-7 (1st Cir. 1994) (characterizing as "nonexistent" and "not a defense at all" the "'defense' of apparent public authority" based "on a mistaken but good-faith belief that one's conduct is authorized by the government"); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) (declining to adopt view that "a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real"); *cf. United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980) (noting in dicta that defendants' claim that CIA officer had conspired with them to murder an ambassador "would not have created a defense if appellants' participation in the crimes

had been established," and therefore describing evidence of the officer's employment with the CIA as likely "immaterial"); *United States v. North*, 910 F.2d 843, 881 (D.C. Cir.), opinion withdrawn and superseded on other grounds on reh'g, 920 F.2d 940 (D.C. Cir. 1990) (rejecting defendant's contention that "reasonable reliance on the apparent authority of one's superiors" is a defense).

### (2) Entrapment by Estoppel

"The difference between the entrapment by estoppel defense and the public authority defense is not great." *Burrows*, 36 F.3d at 882; see also *United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) ("The elements that comprise the two defenses are quite similar."); *Sheppard*, No. 2022 WL 17978837, at *7 (noting that the two defenses "are often conflated"). Courts have narrowly construed the entrapment-by-estoppel defense. Recent case law has limited the entrapment-by-estoppel defense to the circumstances in which a defendant reasonably relies on a government agent's interpretation of a statute that, if accurate, would render the defendant's conduct non-criminal. "To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018); *see also Chrestman*, 525 F. Supp. 3d at 33 (adopting *Cox* test).

### (3) Mistake of Law

Mistake of law, by itself, does not generally excuse criminal conduct, and does not generally constitute an affirmative defense. *See, e.g.*, *United States v. Holland*, 810 F.2d 1215,

1222 (D.C. Cir. 1987). The affirmative defenses of public authority and entrapment by estoppel, however, both contain mistake-of-law as an element of their requirements. *See United States v. Eicher*, CR 22-38 (BAH), 2023 WL 3619417, at *2 (D.D.C. May 23, 2023); *United States v. Sheppard*, CR 21-203 (JDB), 2022 WL 17978837, at *8 (D.D.C. Dec. 28, 2022); *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (BAH).

### (4) Preclusion of Evidence or Improper Argument

Courts have routinely rejected jury instructions or requests to put on evidence by defendants whose proffered evidence fails, as a matter of law, to meet these requirements. *See, e.g.*, *United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir. 1994) (affirming denial of motion to appoint psychological expert to testify in support of entrapment-by-estoppel defense); *United States v. Weitzenhoff*, 35 F.3d 1275, 1290 (9th Cir. 1993) (upholding refusal to instruct jury on entrapment-by-estoppel defense); *United States v. Brebner*, 951 F.2d 1017, 1024-27 (9th Cir. 1991) (affirming exclusion of evidence purporting to raise the defense as a matter of law).

### ARGUMENT

Dillon's reliance on an affirmative defense of authorization—whether described as "mistake of law," "public authority," or "entrapment by estoppel"—is misplaced. These affirmative defenses could not apply to these facts as a matter of law for several reasons. First, Dillon cannot point to any statement made by the former President directing him to enter the restricted area around the Capitol or the Capitol itself, or to act in a disorderly or disruptive way in the Capitol. Dillon cannot point to any statement made by the former President that it was lawful for him to do so. Second, the former President did not have actual authority to ask Dillon to enter the Capitol, or instruct him to enter the Capitol, or inform him that he could legally enter the Capitol. Third, the defense requires that Dillon's reliance be reasonable. Even if Dillon believed

that former President Trump authorized him to engage in illegal conduct, it would have been objectively unreasonable to rely on such authority. This Court should therefore preclude these affirmative defenses in advance of trial.

### (1) The Former President did not address the legality of Defendant's actions.

The former President's statements did not in any way address the legality of Dillon's actions on January 6. The public authority defense is "available only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful." *United States v. Carpenter*, CR 21-305 (JEB), 2023 WL 1860978, at *2 (D.D.C. Feb. 9, 2023) (quoting *Sheppard*, 2022 WL 17978837, at *9).

Here, Dillon does not point to any statement or action by the former President that would have rendered his actions lawful. As multiple Judges on this Court have held, the former President's speech at the Ellipse "neither stated nor implied that entering the restricted area of the Capitol grounds and the Capitol building or impeding the certification of the electoral vote was lawful." *Sheppard*, 2022 WL 17978837, at *9; *see also Carpenter*, 2023 WL 1860978, at *3 ("Because the Court is persuaded that Trump's statements at the January 6 rally do not plainly state or imply that entering the Capitol or interfering with the electoral certification would be lawful, they cannot support an entrapment-by-estoppel or public-authority defense"); *United States v. Grider*, CR 21-022 (CKK), 2022 WL 3030974, at *3 (D.D.C. Aug. 1, 2022) ("Grider has identified no statement by former President Trump—or any other government official—assuring him that obstructive trespass on Capitol grounds was lawful"). The former President's words encouraged "those at the rally to march to the Capitol—nothing more—and do not address legality at all." *Sheppard*, 2022 WL 17978837, at *9. Because the former President's statements do not amount to an express or implied statement of legality, the public authority defense is not available.

### (2) The former President lacked actual authority to order Defendant's criminal conduct.

The President lacks the actual authority to empower citizens to enter restricted Capitol grounds. In rejecting an entrapment-by-estoppel defense for January 6 defendants, then-Chief Judge Beryl A. Howell recognized that:

> [A President] cannot, in keeping with his constitutional function and his responsibilities under Article II, lawfully permit actions that directly undermine the Constitution. Thus, a President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government. Were a President to attempt to condone such conduct, he would act *ultra vires* and thus without the force of his constitutional authority. . . . Put simply, even if former President Trump in fact [explicitly directed the rioters' actions,] his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability.

*Chrestman*, 525 F. Supp. 3d at 32-33.

The D.C. Circuit came to the same conclusion in *North*, 910 F.2d at 879. In the wake of the Iran-Contra scandal, Lieutenant Colonel Oliver North faced criminal prosecution for conduct that North said he had been directed to engage in by the National Security Advisor to President Reagan, allegedly with the President's acquiescence or approval. North was a high-ranking government official indisputably working on behalf of the Administration. His superior, the National Security Advisor, had not only condoned but engaged in similar misconduct; and his superior reported directly to the President. North subpoenaed the former President Ronald Reagan to be a witness at his trial. North also requested that the trial court use this jury instruction at his trial: "If you find that . . . North acted in good faith on a superior's apparent authorization of his action, and that his reliance was reasonable based on the facts as he perceived them, that is a complete defense . . . ." *Id.*

The D.C. Circuit flatly rejected North's claim that he could raise a good-faith defense based

on the apparent or implied authorization by his superiors in the Executive Branch:

> North's suggested instruction, quoted above, goes so far as to conjure up the notion of a "Nuremberg" defense, a notion from which our criminal justice system, one based on individual accountability and responsibility, has historically recoiled. In the absence of clear and comprehensible Circuit authority that we must do so, we refuse to hold that following orders, without more, can transform an illegal act into a legal one.

*Id*. at 881. The D.C. Circuit similarly concluded that whether North "was following President Reagan's orders" was "immaterial" to whether North intended to "corruptly" obstruct Congress under 18 U.S.C. § 1505. *Id*. at 884. In doing so, the Court rejected North's "stunning" idea that he could "escape the criminal consequences of his otherwise unlawful acts merely by asserting that his reason for committing the acts was that he was 'following orders.'" *Id*. at 883-84.

Here, Dillon's claim of authorization is weaker than North's unsuccessful claim in virtually every respect. He alleges no connection to the former President, who, he claims, authorized his unlawful conduct. Dillon is not a government official, let alone a government official engaged in high-level national security work in an administration. Instead, he is a member of the public who claims, without more, that his "reliance on instructions by the President of the United States is an affirmative defense." ECF No. 35 at 2. The President has no power to unilaterally "waive statutory law." *Chrestman*, 525 F. Supp. 3d at 33; *see Eicher*, 2023 WL 3619417, at *3 (explaining that the public authority defense is unavailable "where a government actor's statements constitute a 'waiver of law' beyond his or her lawful authority"). Because Dillon cannot show that the former President had actual authority to authorize his criminal conduct on January 6, the public authority defense is not available as a matter of law.

### (3) Defendant's reliance was unreasonable.

Even if the former President's statements had specifically addressed Dillon's conduct (they did not), and even if the former President had the authority to instruct Dillon to break the law (he

did not), Dillon cannot demonstrate reasonable reliance. Any claim that Dillon sincerely believed he had been authorized to enter the restricted grounds of the Capitol, or the Capitol itself, and then act in a disruptive or disorderly manner, would be objectively unreasonable.

"[A] defendant makes out a defense of public authority only when he has shown that his reliance on governmental authority was reasonable as well as sincere." *Burrows*, 36 F.3d at 882; see *Fulcher*, 250 F.3d at 254; *Sariles*, 645 F.3d at 318-19. This reasonableness requirement is necessary to ensure the "uniform enforcement of law"; otherwise, anyone could interpret a public official's actions or statements as authorizing them to engage in criminal conduct. *Burrows*, 36 F.3d at 882 (quoting *United States v. Lansing*, 424 F.2d 225, 227 (9th Cir. 1970)). "[R]easonable reliance occurs" only "if 'a person sincerely desirous of obeying the law would have accepted the information as true and would not have been put on notice to make further inquiries.'" *United States v. Lynch*, 903 F.3d 1061, 1077 (9th Cir. 2018) (quoting *United States v. Batterjee*, 361 F.3d 1210, 1216-17 (9th Cir. 2004); *United States v. Corso*, 20 F.3d 521, 528 (2d Cir. 1994) (adopting "sincerely desirous" standard).

Along with a mob of other rioters, Dillon took several unlawful steps, including entering the Capitol building. Even if Dillon were able to show that he subjectively believed such conduct was lawful, that belief is, as a matter of law, objectively unreasonable. At a minimum, when he climbed into the Capitol through a broken window, any reasonable person in that circumstance would "[know] he was breaking the law" regardless of the former President's purported authority. *Corso*, 20 F.3d at 529. Dillon therefore cannot rely on the public authority defense.

Dillon does not satisfy any part of the entrapment-by-estoppel test either. The former President never purported to interpret the scope of the criminal statutes Dillon is charged with violating. In other words, there is no evidence that the former President "affirmatively assure[d]

the defendant that certain conduct [was] legal." *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994); *see also Chrestman*, 525 F. Supp. 3d at 32 (explaining that the defense in the January 6 context "would not be premised . . . on a defendant's confusion about the state of the law and a government official's clarifying, if inaccurate, representations. It would instead rely on the premise that a defendant, though aware that his intended conduct was illegal, acted under the belief President Trump had waived the entire corpus of criminal law as it applied to the mob").

## CONCLUSION

For the reasons set forth herein, the government respectfully requests that this Court preclude Dillon from (1) arguing a public-authority defense; (2) arguing an entrapment-by-estoppel defense; (3) otherwise raising any affirmative defense discussed in ECF No. 35.

          MATTHEW M. GRAVES
          United States Attorney
          DC Bar No. 481052

By:   */s/ John Oxenreiter*
      JOHN OXENREITER
      New York Bar Reg. No. 5511597
      Assistant United States Attorney
      U.S. Attorney's Office for the District of Columbia
      601 D Street NW
      Washington, DC 20530
      John.Oxenreiter@usdoj.gov
      (202) 252-7228

      MICHAEL L. BARCLAY
      New York Bar Reg. No. 5441423
      Assistant United States Attorney
      U.S. Attorney's Office for the District of Columbia
      601 D Street NW
      Washington, DC 20530
      Michael.Barclay@usdoj.gov
      (202) 252-7669