UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

      v.                                                  Case No.: 1:23-cr-00108-TSC

MICHAEL JOHN DILLON,

    Defendant.

**RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO
PRECLUDE IMPROPER DEFENSE ARGUMENTS**

**A. The Former President Did Address the Legality of Defendant Dillon's Actions**

The public authority defense is "available only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful." United States v. Carpenter, CR 21-305 (JEB), 2023 WL 1860978, at *2 (D.D.C. Feb. 9, 2023) (quoting Sheppard, 2022 WL 17978837, at *9).

In November 2022, when Chinese citizens protested against the Communist Party's zero-COVID policy, a White House official, National Security Council spokesperson John Kirby, spoke in favor of the legality of the protesters' actions. *Press Briefing by Press Secretary Karine Jean-Pierre and National Security Council Coordinator for Strategic Communications John Kirby*, WHITE HOUSE, Nov. 28, 2022, https://www.whitehouse.gov/briefing-room/press-briefings/2022/11/28/press-briefing-by-press-secretary-karine-jean-pierre-and-national-security-council-coordinator-for-strategic-communications-john-kirby-4/. "This is, I think, a moment to reassert what we believe in when it comes to free assembly and — and peaceful protest. And we've done that and will continue to do that, whether it's people protesting in Iran or China or anywhere else around the world." *Id*. And our message to peaceful protesters around the world is the same and consistent: People should be allowed the right to assemble and to peacefully protest policies or laws or dictates that they take issue with. *Id*. The White House supports the right of peaceful protest. *Id*.

On January 6, 2021, the president of the United States, Donald J. Trump, gave a speech at the Elipse to over a hundred thousand supporters. Trump urged his supporters to march on the Capitol. "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard," said Trump. Former President Trump's statements, urging supporters to march on the Capitol "peacefully and patriotically" similarly clearly imply that the protesters' actions are lawful. Just as the current administration official's statements clearly imply the actions of protesters in China are lawful, former President Trump's statements clearly imply Dillon's actions are lawful, with the only stipulation being that Dillon would have to protest peacefully and patriotically. According to the government's MIL to preclude certain improper defense arguments, Dillon "entered the Capitol through a broken window and remained inside for about five minutes." He was still protesting peacefully and patriotically as the President had urged.

Dillon responded to the President's request very reasonably. And it was reasonable to expect that the Capitol would be a free speech forum where Dillon and others could "make [their] voices heard." These facts are directly relevant to Dillon's defenses.

**B. Defendant Dillon Can Show that Former President Trump had Actual Authority to Authorize His Conduct of Going to the Capitol.**

A president has the pardon power. *See* Art. II, § 2, Cl 1. The clause says the president "shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." *Id*. A presidential pardon can thus only be issued for a federal crime. As Justice Field wrote in his majority opinion, "The [pardon] power . . . extends to every offence known to the law, and may be exercised at any time after its commission, either before legal proceedings are taken or during their pendency or after conviction and judgment." *See Ex Parte Garland*, 71 U.S. 333 (1866). Based on the pardon power, it can be argued that the President has actual authority to authorize criminal conduct, which is equivalent to pardoning federal crimes with respect to that defendant only. For example, in the case of President Nixon, he was granted a

pardon by Gerald Ford in September 1974 for any crimes he might have committed during the Watergate scandal, even though Nixon was not charged with or convicted of federal crimes (this is known as a pre-emptive pardon).  One could argue that Gerald Ford authorized President Nixon's criminal conduct.  Here, even if President Trump never explicitly instructed protesters to commit crimes at the Capitol, Defendant Dillon can show that President Trump had actual authority to authorize his criminal conduct for committing the federal offenses which the government alleges: 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G).

    **C. Defendant Dillon's Reliance Was Not Unreasonable**

    The government argues that even if Dillon were able to show that he subjectively believed his conduct was lawful, that belief is, as a matter of law, objectively unreasonable: "at a minimum, when he climbed into the Capitol through a broken window, any reasonable person in that circumstance would "[know] he was breaking the law" regardless of the former President's purported authority.  Dillon therefore cannot rely on the public authority defense."  The government's argument assumes a reasonable person would know he was breaking the law.  However, in a proposed settlement filed in federal court in New York City on February 28, 2023, the city said it would compensate about 320 people who participated in the George Floyd protests in a certain Bronx borough.  Daniella Silva, *NYC Agrees to Pay Millions to Hundreds of George Floyd Protesters Who Were Corralled by Police*, NBCNEWS, Mar. 1, 2023, https://www.nbcnews.com/news/us-news/nyc-agrees-pay-21500-hundreds-george-floyd-protesters-corralled-police-rcna72921.  In that case, hundreds of protesters who were demonstrating against police brutality and racism after Floyd's death were encircled and corralled by a group of police officers wearing riot gear and riding bicycles in a controversial practice known as "kettling."  Eligible class-action members would receive $21,500.  One plaintiff in the lawsuit said, "On June 4, 2020, during the height of a global health crisis, alongside 300 Black and Brown individuals, I

was violated by the NYPD.  We had every right to protest, yet, the City of New York made an explicit statement that day that the people of the Bronx are at will to be terrorized."  In the heat of the moment, and even with 20/20 hindsight, it can appear that a reasonable person would know he was breaking the law.  Certainly, some of the George Floyd protesters in New York that night thought they were violating the law when they participated in "wide-scale rioting, mass chaos, violence, and destruction."  However, their actions were vindicated when the city settled with them.  They were in fact not breaking the law.  Here, Defendant Dillon also should be able to show that he was not breaking the law when he participated in the Capitol protest.

**The entrapment-by-estoppel defense is absolutely proper, given the evidence in this case.**

Evidence at trial will show that defendant Dillon entered onto Capitol Grounds and/or buildings through open gates and/or doors, and did not perceive any police announcements or commands to leave or stay away.  This is a defense to every count of the charging instrument.  To hold otherwise would be to deprive Dillon of his right to put on a defense.

**Dillon has a proper, appropriate, material and relevant Mistake of Law defense.**

The evidence will show that (1) Dillon understood the President of the United States to instruct or suggest Dillon should go to "the Capitol building," (2) Dillon reasonably believed and knew that the Capitol Grounds were open to him to "raise his voice" in protest and redress of grievances, and (3) the government lacked proper barricades, signs, and forceful efforts to remove or stop Dillon from being at the Capitol.  This is a defense for Dillon.

## Conclusion

Dillon's reliance on instructions by the President of the United States is an affirmative defense. Accordingly, Dillon has a right to present evidence supporting this defense.

Date: November 13, 2023

Respectfully Submitted,
*/s/ John M. Pierce*
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172

Woodland Hills, CA 91367
Tel: (213) 400-0725
Email:jpierce@johnpiercelaw.com
Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that, on November 13, 2023, this motion was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

*/s/ John M. Pierce*

John M. Pierce