UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 1:23-cr-0108 (TSC) |
| v. | : | |
| | : | |
| MICHAEL JOHN DILLON, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE*
TO PRECLUDE IMPROPER AFFIRMATIVE DEFENSES

In his Response (ECF No. 41) to the Government's motion *in limine* to preclude improper defense arguments (ECF No. 40), defendant Michael John Dillon claims that, "based on the pardon power," the former president had "actual authority to authorize [Dillon's] criminal conduct," and brings up two unrelated situations in support of his proffered affirmative defense. For the reasons stated herein and in its initial motion, the government's motion should be granted.

**(1) The former President had no authority to authorize criminal conduct.**

Dillon all but concedes that actual authority is required to present a defense of authorization, instead arguing that the presidential pardon power invests the president with actual authority to authorize criminal conduct. Dillon claims, in essence, that the mere existence of the pardon power means that the president may waive statutory law, and that this waiver may occur even without any formal exercise of the pardon power. ECF No. 41, at 2. This is not so.

A pardon is not an affirmative legal defense. A pardon is "an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual . . . from the punishment the law inflicts for a crime he has committed." *United States v. Wilson*, 32 U.S. 150, 160 (1833). A pardon does not "render innocent a defendant of any alleged violation of the law." *United States v. Flynn*, 507 F. Supp. 3d 116, 136 (D.D.C. 2020); *United States v. Schaffer*, 240

1

F.3d 35, 38 (D.C. Cir. 2001) ("[A]cceptance of a pardon may imply a confession of guilt.")). The "decision to pardon [a person] is a political decision, not a legal one." *Flynn*, 507 F. Supp. at 136.

The pardon power could not give rise to a public-authority or entrapment-by-estoppel defense in a January 6 case for three related reasons. First, a public-authority defense requires that the defendant reasonably relied on a federal law-enforcement officer's authorization of the criminal conduct. *United States v. Navarro*, 22-cr-200-APM, 2023 WL 371968, at *15 (D.D.C. Jan. 19, 2023) (quoting *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015)). Because the former president neither pardoned nor promised a pardon to any actor in the events of January 6 prior to those events, it is impossible that any participant acted in reliance on a promise of a pardon. *United States v. Eicher*, 22-cr-38-BAH, 2023 WL 3619417, at *5 (May 23, 2023).

Second, Dillon's argument merely reformulates the proposition—that the President can proactively waive the criminal law—that a court of this district rejected in *United States v. Chrestman* as "beyond the constitutional pale." 525 F. Supp. 3d 14, 32–33 (D.D.C. 2021). The Court in *Eicher* reasoned that even if the former president "ordered the crowd to attack the Capitol and disrupt the certification of the electoral vote count, he acted beyond his power as President, and his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability." *Eicher*, WL 3619417, at *5.

Third, this argument of public-authority-by-pardon is weaker than a garden-variety public-authority defense, because "[i]t does not follow from the President's pardon power that the President can also proactively waive the criminal law—after all, a pardon acts on its recipient's supposed conviction, without purporting to address her innocence or guilt, and . . . may imply a confession of guilt." *Eicher*, WL 3619417, at *5. The pardon power cannot give rise to a public-authority defense because a pardon is not a determination that conduct is legal.

2

### (2) The former President did not address the legality of Dillon's actions, and any reliance on his speech is unreasonable.

Dillon also asserts that the former President's words on January 6 "urged his supporters to march on the Capitol" and "clearly imply that the protesters' actions are lawful." ECF No. 41, at 2. But the words Dillon points to, in which the former President acknowledged that people in the crowd would "soon be marching over to the Capitol building to peacefully and patriotically make your voices heard," *id.*, simply do not support this contention. Nor does Dillon's choice to climb through a broken window amount to a "reasonable" response to these words. *Id.*

Dillon's attempted analogy to protests in China and New York City are simply irrelevant to the Court's analysis here. A White House official's statement in support of an international right to peaceful protest, made in November 2022, has no bearing on the legality of Dillon's actions. Similarly, a civil settlement with a group of unrelated protestors sheds no light on whether Dillon's actions were "lawful," or whether he believed he was breaking the law. These arguments have no relation to any affirmative defense that Dillon can raise, do not demonstrate the reasonableness of his reliance on any authorization, and should be disregarded.

Therefore, the government respectfully requests this Court grant the government's motion for an *in limine* order precluding certain arguments.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:   */s/ John Oxenreiter*
JOHN OXENREITER
New York Bar Reg. No. 5511597
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, DC 20530
John.Oxenreiter@usdoj.gov
(202) 252-7228

MICHAEL L. BARCLAY
New York Bar Reg. No. 5441423
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, DC 20530
Michael.Barclay@usdoj.gov
(202) 252-7669