UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 1:23-cr-0108 (TSC) |
| v. | : | |
| | : | |
| MICHAEL JOHN DILLON, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY BRIEF IN SUPPORT OF ITS MOTIONS *IN LIMINE*
REGARDING THE SPECIFIC LOCATIONS OF U.S. CAPITOL POLICE
SURVEILLANCE CAMERAS AND CROSS-EXAMINATION OF U.S. SECRET
SERVICE WITNESSES**

The United States of America files this consolidated reply brief in response to Defendant Michael John Dillon's opposition to the United States' motion *in limine* to limit cross-examination of U.S. Secret Service witnesses on certain security-related topics (ECF No. 42), as well as Dillon's opposition to the United States' motion *in limine* to preclude evidence of the specific location of U.S. Capitol Police Surveillance cameras (ECF No. 43). For the reasons stated herein and in its opening briefs, both motions should be granted. (ECF Nos. 38, 39)

**A. The Confrontation Clause Does Not Permit Unfettered Presentation of Evidence or Cross-Examination in Support of an Affirmative Defense**

In his oppositions to both motions, Dillon asserts that his Confrontation Clause right trumps this Court's ability to limit the presentation of evidence or cross-examination where it is related to an ostensible affirmative defense. (*See* ECF No. 42 at 1; ECF No. 43 at 1.) Dillon cites no case in support of this proposition, and it is contradicted by the caselaw cited in the government's opening briefs. (ECF No. 38 at 3, ECF No. 39 at 3.) Put simply, the Confrontation Clause "does not bar a judge from imposing reasonable limits on a defense counsel's inquiries." *United States v. Derr*, 990 F.2d 1330, 1334 (D.C. Cir. 1993).

1

## B. Cross-Examination of Secret Service Witnesses (ECF No. 42)

In his opposition, Dillon now argues that he is entitled to cross-examine Secret Service witnesses about whether "a person could unintentionally enter a restricted area," because a "passerby would have no reason to know" if they did not see or hear the signs, barricades, or announcements denoting the restricted area. (ECF No. 42 at 2.) Dillon again attempts to conflate the Government's burden to prove the existence of the restricted area around the Capitol for purposes of Counts One and Two (18 U.S.C. § 1752(a)(1) and (2)) with its burden to prove that Dillon knowingly entered or remained in that area for purposes of Count One (18 U.S.C. § 1752(a)(1)). What a Secret Service agent, who may not have personal knowledge of the qualities of the physical perimeter (and may not be asked to describe it during direct examination), thought a hypothetical person *could* have seen is both irrelevant to Dillon's knowledge and likely to confuse the jury, and so this line of inquiry should be precluded.

Dillon fares no better with his supposition that "[i]f a restricted area's designation could change based on the facts and circumstances on the ground, as in the January 6 incident where the protest incident could have led protesters to enter a restricted area because such area was in fact a safer location than being in the middle of a mob, then a passerby might find it within reason to enter the restricted area for his own safety." (ECF No. 42 at 2.) As a factual matter, the designation of the "restricted area" itself did not change on January 6, 2021—it is the "post[ings], cordon[s]," 18 U.S.C. § 1752(c)(1), and other physical markers of that restricted area that were breached and swept away by the mob. Again, the Government carries the burden at trial of proving whether Michael Dillon had knowledge he was entering or remaining in a restricted area. Defense's request to inquire what a hypothetical rioter might have thought or done is speculative, irrelevant to any element or defense in Dillon's case, and likely to confuse the jury.

Accordingly, in addition to granting the relief in the Government's initial motion *in limine* (ECF No. 38) by limiting cross-examination of Secret Service witnesses about security-related topics, the Court should also preclude defense's irrelevant cross-examination about the "hypothetical" rioter.

### C. The Precise Locations of Capitol Surveillance Cameras Are Irrelevant and Substantially Outweighed by the Danger to National Security (ECF No. 43)

Dillon asks this Court to allow evidence about the exact locations of U.S. Capitol Police surveillance, such as maps of surveillance coverage, as well as cross-examination of the government's witnesses on the same topics. Defendant's opposition is based on supposition and conjecture that does not address the national security concerns associated with revealing the precise locations of those cameras. *See* ECF No. 38-1 at ¶ 11–15 (Decl. of Thomas DiBiase).[1] And again, while Dillon's location might be relevant to the charges in this case, Dillon provides no reason to conclude that the exact location of the surveillance cameras recording Dillon, as opposed to their general location (i.e. camera "facing the Senate Wing Door"), would be relevant. Because it is irrelevant, and any marginal relevance is substantially outweighed by the danger to

---

[1] The House of Representatives' Committee on House Administration's November 17, 2023 public release of approximately 90 clips of Capitol January 6 surveillance footage does not alter this analysis, as that release did not publicly disclose the precise location of any cameras themselves or any camera maps. In fact, Speaker Mike Johnson's announcement of this decision expressly stated that prior to being uploaded, the Committee would process USCP CCTV footage to "blur[] the faces of private citizens on the yet unreleased tapes to avoid any persons from being targeted for retaliation of any kind and segregat[e] an estimated 5% of the videos that may involve sensitive security information related to the building architecture." *See* Speaker Mike Johnson (@SpeakerJohnson), Twitter (Nov. 17, 2023, 4:33PM), https://twitter.com/SpeakerJohnson/status/1725628274657706198. In other words, Speaker Johnson's decision to redact and segregate the USCP CCTV footage for security concerns demonstrates the continued need to protect the exact locations of USCP CCTV cameras from public disclosure.

national security, the Court should grant the Government's motion *in limine* restricting evidence and inquiry about the cameras' exact locations (ECF No. 39).

                                      Respectfully submitted,

                                      MATTHEW M. GRAVES
                                      United States Attorney
                                      DC Bar No. 481052

By:    */s/ Michael L. Barclay*
           MICHAEL L. BARCLAY
           New York Bar Reg. No. 5441423
           Assistant United States Attorney
           U.S. Attorney's Office for the District of Columbia
           601 D Street NW
           Washington, DC 20530
           Michael.Barclay@usdoj.gov
           (202) 252-7669

           JOHN OXENREITER
           New York Bar Reg. No. 5511597
           Assistant United States Attorney
           U.S. Attorney's Office for the District of Columbia
           601 D Street NW
           Washington, DC 20530
           John.Oxenreiter@usdoj.gov
           (202) 252-7228