UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 1:23-cr-0108 (TSC) |
| v. : | |
| : | |
| MICHAEL JOHN DILLON, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO LIFT PROTECTIVE ORDER AND ORDERS *IN LIMINE***

Defendant Michael Dillon asks this Court to lift "all protective orders and orders *in limine* limiting evidence and discussion of CCTV footage locations." (ECF No. 47.) Dillon claims that the U.S. House of Representatives' recent announcement of its intent to release surveillance footage from January 6, 2021 renders "the grounds and basis for this Court's protective orders and certain rulings in this case . . . moot." *Id.* Dillon fails to articulate any factual or legal basis for such relief, and his motion should be denied.

On April 27, 2023, this Court issued, with Dillon's consent, a Protective Order governing discovery "[t]o expedite the flow of discovery material between the parties and adequately protect the United States' legitimate interests." (ECF No. 19.) That Protective Order, identical to those entered in hundreds of other January 6 cases, delineates between categories of information across case-specific and global discovery material which the United States may designate as "Sensitive" or "Highly Sensitive," thus subjecting it to differing restrictions on access. Surveillance camera footage is only one of several enumerated categories of discovery that the United States may so designate. *Id*. at 1. The Order requires the parties to "make a good faith effort to resolve any dispute about a sensitivity designation before requesting the Court's intervention," and further states its restrictions "shall not limit either party in the use of the materials in judicial proceedings."

1

*Id.* at 3, 4. Finally, the Protective Order expressly excludes from its reach, "[m]aterials that the defense obtains by means other than discovery." *Id.* at 5 ¶ 11(c).

On November 17, 2023, the Speaker of the U.S. House of Representatives announced that he would be releasing approximately 40,000 hours of Capitol surveillance footage taken on January 6, 2021. Speaker Mike Johnson (@SpeakerJohnson), Twitter (Nov. 17, 2023, 4:33 PM), https://twitter.com/SpeakerJohnson/status/1725628274657706198. The announcement makes clear that the House is not and has not released *all* USCP CCV footage from January 6, 2021. The Speaker stated that the Committee on House Administration "would move as quickly as possible" to upload a portion of USCP CCV footage to the Committee's public website, and as of the date of this motion, the Committee's online viewing room appears to have made only approximately 90 clips of surveillance footage publicly available. *See* https://cha.house.gov/cha-subcommittee-reading-room-fe781e74-d577-4f64-93cc-fc3a8dd8df18. The Speaker also stated that prior uploading any footage, the Committee would process the USCP CCTV footage to "blur[] the faces of private citizens on the yet unreleased tapes to avoid any persons from being targeted for retaliation of any kind and segregat[e] an estimated 5% of the videos that may involve sensitive security information related to the building architecture." Speaker Mike Johnson (@SpeakerJohnson), Twitter (Nov. 17, 2023, 4:33 PM), https://twitter.com/SpeakerJohnson/status/1725628274657706198. In other words, Speaker Johnson and the Committee have recognized the continued privacy and security concerns in releasing such footage.

Dillon's motion does not articulate a reason why the Committee's public release of a limited tranche of the Capitol CCV footage justifies the wholesale elimination of the Protective

Order.[1]  As a factual matter, the Protective Order by its own terms does <u>not</u> apply to surveillance footage released to the public by the Committee, which Dillon is free to use.  The Protective Order only governs any materials Dillon obtained through discovery in this case (including global discovery)—and not what other branches of government might disclose or what Dillon might gain access to independently from the discovery process.

Dillon also does not explain how the Committee's release of a limited tranche of Capitol surveillance footage eliminates the national security interest in protecting *any* such footage—an interest also recognized by the Speaker's announced process.  *See United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (per curiam) (citation omitted) ("[A]mong the considerations to be taken into account by the court [in imposing a protective order are] the safety of witnesses and others, a particular danger of perjury or witness intimidation, [and] the protection of information vital to national security."); ECF No. 38-1 at ¶ 2 (Decl. of Thomas DiBiase).  As another judge of this Court noted, "that [other] video footage of the January 6 events is publicly available does not diminish the need for confidentiality of the [CCTV] footage . . . ." *United States v. Cudd,* 534 F. Supp. 3d 48, 54 (D.D.C. 2021); *cf. United States v. William Pope*, 21-cr-128-RC (ECF No. 103) (April 26, 2023) ("The fact of that mediated access [to Capitol surveillance footage by the Tucker Carlson Tonight show] alone . . . does not defeat the security interest advanced by the protective order in preventing unmediated access to Highly Sensitive material by Defendant.").

Finally, Dillon fails to explain why restrictions are no longer needed on the other categories of discovery subject to the Protective Order.  In this case, that includes the reports and identity of

---

[1] Because this Court has yet to rule on the United States' motion *in limine* to limit evidence regarding the specific location of Capitol surveillance camera (ECF No. 38), Dillon's further request to lift "orders *in limine* limiting evidence and discussion of CCTV footage locations" is unripe.  The Government will address the Committee's release of footage in its reply brief in support of that motion.

witnesses and informants, personally identifiable information, sealed search warrants, and law enforcement reports, which all remain worthy of protection.  *See Cudd,* 534 F. Supp. 3d at 54. ("How well the Capitol riot has been publicized . . . does not make the items that the protective order might cover—including '[p]ersonal identity information' or information about 'individuals that do not appear to be related to the criminal conduct in this case,' [. . .]—any less worthy of protection.").

Dillon's motion provides no reason to revisit the Protective Order entered in this and hundreds of other cases.  This Court should deny his motion.

          Respectfully submitted,

          MATTHEW M. GRAVES
          United States Attorney
          DC Bar No. 481052

By:   */s/ Michael L. Barclay*
       MICHAEL L. BARCLAY
       New York Bar Reg. No. 5441423
       Assistant United States Attorney
       U.S. Attorney's Office for the District of Columbia
       601 D Street NW
       Washington, DC 20530
       Michael.Barclay@usdoj.gov
       (202) 252-7669

       JOHN OXENREITER
       New York Bar Reg. No. 5511597
       Assistant United States Attorney
       U.S. Attorney's Office for the District of Columbia
       601 D Street NW
       Washington, DC 20530
       John.Oxenreiter@usdoj.gov
       (202) 252-7228