# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 1:23-cr-0108 (TSC) |
| v. : | |
| : | |
| MICHAEL JOHN DILLON, : | |
| : | |
| Defendant. : | |

## UNITED STATES' OBJECTIONS TO DEFENDANT'S PROPOSED TRIAL EXHIBITS AND MOTION FOR AN ORDER REQUIRING DEFENSE TO PRODUCE PROPOSED EXHIBITS TO THE GOVERNMENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby provides its anticipated objections to the admissibility of certain exhibits contained on Defendant's 48-item Exhibit List (ECF No. 49).

As a threshold matter, the defense has not provided to the Government *any* of the exhibits noticed on its exhibit list, despite the undersigned's requests by email for the same on November 30, 2023 and December 4, 2023. Accordingly, with one exception noted below, the Government provides its objections based solely on the descriptions of the exhibits on defense's list. Many of these exhibit titles do not describe what the proffered exhibit is. *See, e.g.*, Def. Exs. 5, 11, 14, 15, 18-23, 25, 39-40, 43, 48. Such objections regrettably entail a degree of conjecture and educated guesswork as to what the exhibits might show.

Subject to these limitations, the Government first attempts to simplify its anticipated objections into categories of exhibits. For the category described as "'Permitted' Demonstrations," the Government's anticipated objections are based on the names given to the exhibits by the defense, as well as similarly named exhibits in other January 6 matters. The Government then provides a table with line-by-line objections (or reserved objections) corresponding to each exhibit.

1

The Government reserves the right to supplement or make additional objections following its receipt and review of the defense exhibits themselves.

Finally, the Government requests that the Court require the defense to disclose its exhibits to the Government no later than December 8, 2023, so any additional objections may be presented to the Court before the pre-trial conference scheduled for December 12, 2023.

## I. Categorical Objections

### a. Character of Defendant

The Government anticipates that it will object on the basis of Fed. R. Evid. 401, 403, and 404 to evidence of Defendant's character and personal characteristics. *See, e.g.*, Def. Ex. 1. However, without the exhibits themselves, it is impossible for the Government to determine, for instance, what trait the defense seeks to elicit under Fed. R. Evid. 404(a)(2)(A) and whether such trait would be "pertinent."

### b. Actions of Law Enforcement Officers Not Observed by Defendant

The Government anticipates that it will object on the basis of Fed. R. Evid. 401 and 403 to video, photographic, and documentary evidence regarding the actions of law enforcement officers whose testimony is not elicited at trial and whose conduct was not directly observed by the Defendant on January 6, 2021. Based on their names, many of these noticed exhibits may pertain law enforcement's use of force against rioters on January 6. *See, e.g.*, Def. Exs. 27–29, 36–37. Such evidence would be irrelevant if Dillon did not see or experience what is depicted. In any event, any exhibits that attempt to play on the jury's sympathy by suggesting law enforcement's improper use of force against other rioters could run afoul of Rule 403.

### c. Law Enforcement Use-of-Force Policies

The defense also notices several exhibits that, based on their names alone, appear to be various law-enforcement policies on use of force. *See, e.g.*, Def. Exs. 30–34, 44. If true, those policies are also likely excludable under Fed. R. Evid. 401 and 403. Any force that law enforcement used against Dillon, or that Dillon perceived, would be relevant to his intent and knowledge on January 6. But whether that force was justified (which Dillon would not know, in any event) is not relevant to any of the charges or defenses at issue. The defense should be precluded from affirmatively introducing any such policies and encouraging the jury to sympathize and speculate.

### d. Other Rioters or Suspects Not Observed by Defendant

The defense has noticed at least two sets of exhibits that appear to relate to other specific rioters at the Capitol on January 6, 2021. *See* Def. Ex. 26 ("#NWScaffoldCommander"), 42 ("#redonredglasses"). Absent a proffer that Dillon saw the actions of these rioters, such evidence would be irrelevant. Even if it were relevant, presenting the conduct of other rioters not on trial would also be likely to mislead or confuse the jury under Fed. R. Evid. 403. The Government further reserves its right to object to proper authentication of the underlying exhibits under Fed. R. Evid. 901.

The defense has also noted a set of exhibits related to a "Pipe Bomb Suspect." *See* Def. Ex. 41. It seems quite likely that such evidence would be irrelevant to Dillon's charges and defenses and would also be highly prejudicial.

### e. Estoppel or Authorization to Enter the Capitol

The defense has noticed exhibits with names that suggest that other rioters told others to go into the building or that Capitol Police let rioters into the Capitol Building. Def. Exs. 6, 47.

Absent evidence that Dillon saw any such incidents, the Government will likely object to these exhibits because they are irrelevant under Rule 401, and they risk confusing the issues, wasting time, and unfairly prejudicing the jury under Rule 403. To the extent that the defense will attempt to use these exhibits in support of an entrapment-by-estoppel defense, they should be precluded from doing so for the same reasons described in the Government's pending motion *in limine* (ECF No. 40). Put simply, even if Dillon perceived Capitol police "letting" rioters into the building (as opposed to being overwhelmed by a mob), those officers could not authorize criminal conduct, and Dillon's reliance on that action would be unreasonable in light of what else he heard and saw— a broken window (which he climbed through), an audible alarm, and the mob's violence against officers defending the Senate Wing door.

### f.   "Permitted" Demonstrations

Defendant has noticed various exhibits that appear to relate to other supposedly permitted demonstrations near the Capitol grounds on January 6, 2021. *See, e.g.,* Def. Ex. 2 (CDU Ops Plan), 10 (U.S. Capitol Grounds Demonstration Area Map), 17 ("USCPJan.6Timeline"), 24 (5 demonstration permits for J6). Based on the descriptions and the undersigned's experience with a set of similarly named exhibits in another January 6 case,[1] the Government anticipates these exhibits may include:

- **Def. Ex. 2** may be multiple screenshots and documents related to a U.S. Capitol Police Civil Disturbance Unit (CDU), a unit dedicated to responding to unlawful protests and assemblies on Capitol grounds. The documents pertain to an operational plan in advance of January 6, 2021, to prepare officers for expected or unexpected events. It includes information about the permitted use of force, or the expected demonstrations occurring on Capitol grounds.

- **Def. Ex.17** may be a lengthy document detailing the timeline of events for January 6, 2021.

---

[1] *See Gov't Omnibus Mot. in Limine and Notice of Trial Issues,* ECF No. 94, *United States v. Darrell Neely*, 21-cr-642 (JDB) (D.D.C. May 15, 2023).

4

- **Def. Ex. 24** may be a compilation of six demonstration permits for groups who were authorized, by U.S. Capitol Police, to protest or demonstrate on Capitol grounds on January 6, 2021. None of those groups, however, were authorized to protest within the Restricted Perimeter.

If so, it is not clear why any of this evidence would be relevant to the crimes charged against the defendant. None of these documents would pertain to the defendant, or more importantly, knowledge possessed by the defendant. Rather, if prior January 6 cases are any guide, these exhibits may generally pertain to the defendant's inaccurate attempt to show that protests were lawfully permitted within the restricted perimeter on January 6, 2021. They were not.

Should the defense here attempt to emulate arguments made in other cases, the Government expects that the CDU plan, Def. Ex. 2, will present the crux of the issue.[2] In previous cases, the Government has attempted to simplify the issues to the following: (1) the CDU plan does not actually show that a demonstration took place within the restricted perimeter; (2) regardless, the defendant's position misunderstands the legal concept of the restricted perimeter; (3) there is no evidence that this defendant knew about lawful protests occurring inside the restricted perimeter; and (4) the CDU plan is full of hearsay and does not satisfy any exception.

First, if prior January 6 litigation is a guide, the defense may point to a single entry from the "Current Permitted Events" section of the CDU plan to show that a permitted event in fact took place on "the steps of the United States Capitol," that is, within the restricted perimeter. Not so—the contents of the CDU plan put the U.S. Capitol Police on notice of certain events that *may* be occurring—lawfully or unlawfully—on Capitol grounds (an area geographically larger than the

---

[2] For a more detailed discussion, *see Gov't Omnibus Mot. in Limine and Notice of Trial Issues,* ECF No. 94, *Darrell Neely*, 21-cr-642 (JDB) (D.D.C. May 15, 2023); *Gov't Mot. In Limine to Exclude Irrelevant Evidence Rel. to Demonstrations*, ECF No. 92, *United States v. Leo Kelly*, 21-cr-708-RCL (D.D.C. Apr 27, 2023).

5

restricted perimeter). *See, e.g.*, ECF No. 96 at 3, *Kelly*, 21-cr-708-RCL (D.D.C. May 2, 2023). There is no evidence that any other group was lawfully permitted to protest *within* the restricted area. *See* ECF No. 97 at 4, *Leo Kelly*, 21-cr-708-RCL (D.D.C. May 2, 2023).

Second, defendant may argue that if some people *were* lawfully allowed within the restricted perimeter on January 6, 2021, then the restricted perimeter would cease to be restricted. Of course, this disregards that many individuals were lawfully authorized to be inside the restricted perimeter that day, such as congressional staff or law enforcement. Even if a lawfully authorized demonstration existed, it would not nullify the existence of the restricted permitter for purposes of 18 U.S.C. § 1752, since the statute only criminalizes the entry and presence within "any restricted building or grounds *without lawful authority* to do so." 18 U.S.C. § 1752(a)(1) (emphasis added).

Similarly, the defendant may point to the preparation of the restricted perimeter or maps that differ from the government's to show that the restricted perimeter is somehow not enforceable. Defense counsel may also point the fact that barriers were moved (by rioters) to show that the perimeter somehow ceased to exist. These arguments are illogical and wrong. Section 1752(c)(1) defines restricted grounds as "any posted, cordoned off, or otherwise restricted area (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1). Accordingly, the preparations for the restricted area are of no legal significance. Nor are updates to reports about the contours of the perimeter. In other words, the barriers, snow fences, and bike racks that physically manifest the restricted area put the public on notice that there are consequences for entering. The fact that some of those barriers may have been unlawfully moved may be relevant to a particular defendant's *knowledge* of the restricted area, but they do not nullify it entirely.

Third, there is no proof that the defendant knew about lawful protests occurring inside the

6

restricted perimeter or the maps contained in the CDU plan. While the defendant's actual knowledge of a protest within the restricted perimeter could factor into whether the defendant knowingly trespassed into a restricted area, no such evidence exists as to this nexus for this defendant. Similarly, this defendant never observed the map in the CDU plan (or any map, to the government's knowledge), so any map would not be relevant to show what the defendant did or did not know about the perimeter.

      Fourth and finally, if defense has in fact noticed the same document, the CDU plan is riddled with hearsay. Defendant has no plausible argument that a hearsay exception applies, especially in light of the Government's previous proffers as to the document's inaccuracies.

      Briefly, the Government expects that the remaining exhibits defense has noticed (but not provided) suffer from the same flaws. Def. Ex. 24—the authorized demonstration permits—have the same nexus and knowledge problems as described above. The permits have nothing to do with what the defendant knew, saw, or experienced on January 6. Nor do the permits alter the legal landscape surrounding the definition or existence of a restricted perimeter. Def. Ex. 17—the timeline—is similarly untethered to the defendant's knowledge of what occurred at the U.S. Capitol on January 6, and contains inadmissible hearsay.

      The Government therefore anticipates objecting to these exhibits. The contours of whether the defendant unlawfully entered a restricted perimeter rests upon the facts of *this* case (rather than an examination of law enforcement's preparations). The latter will become an extensive trial-within-a-trial about whether the Capitol Police properly constructed a perimeter. In this case, the defendant is alleged to have not only entered the perimeter unlawfully, but also entered U.S. Capitol building through a broken window, while an alarm was blaring. It is thus impossible to see how this evidence is relevant to the defendant's knowledge of the perimeter in this case.

### g. First Amendment Defense

Finally, the defense appears to have noticed exhibits that pertain to the First Amendment. *See, e.g.*, Def. Exs. 4 (Staffers Walk Out of Congress In Protest Over Brown and Garner Cases_NCPR News), 12 (DC municipal regulation on First Amendment assembly), 16 ("DC-FirstAmendment"). The Government anticipates objecting to such exhibits under Fed. R. Evid. 401 and 403, because they are likely irrelevant to any charge or defense in this case and otherwise risk confusing the issues, wasting time, and unfairly prejudicing the jury.

Put simply, if the United States establishes the elements of any of the offenses with which defendant is charged, the First Amendment provides him no defense. This is true even if the evidence of defendant's crimes is intertwined with political discussion and rhetoric. *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the defendants' conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it."); *see also United States v. Hassan*, 742 F.3d 104, 127–28 (4th Cir. 2014) (citing *Amawi*).

Accordingly, all of the exhibits pertaining to the First Amendment may well be irrelevant because they lack a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, and because Dillon is not entitled to a First Amendment defense as a matter of law. To the extent there is any relevance to the defendant's exhibits pertaining to the First Amendment, the Court should exclude them under Fed. R. Evid. 403. Any attempt to shift the jury's attention to questions about whether defendant's actions were protected by the First

Amendment, rather than the charged offenses, would risk confusing the issues, wasting time, and unfairly prejudicing the jury.

## II.     Table

| Ex. No. | Description of Exhibit | Objection Under FRE |
|---|---|---|
| 1 | Slideshow of Photos of Defendant & Family or Friends | 401, 403, 404 |
| 2 | CDU Operational Plan for the USCP | 401, 403, 802 |
| 3 | OPR Interview with Inspector Robert Glover | 401, 403, 802 |
| 4 | Staffers Walk Out Of Congress In Protest Over Brown And Garner Cases _ NCPR News | 401, 403, 802 |
| 5 | DC-001-00000001[37] | Reserved |
| 6 | THE TRUTH - Rally-goers walk into the Capitol - Capitol Police open the doors. | 401, 402, 802, 901 |
| 7 | Photo of Stop Pence and Trump Protest Flyer | 401, 403, 901 |
| 8 | Schedule for Wednesday January 6th 2021 | 401 |
| 9 | Open Source Video Protestors 3 | 401, 403, 901 |
| 10 | U.S. Capitol Grounds Demonstration Area Map | 401, 403 |
| 11 | USCP-011-00055405_image[3] | 401, 403, 802, 901 |
| 12 | Section: 24-705 FIRST AMENDMENT ASSEMBLIES: GENERAL PROVISIONS | 401, 403 |
| 13 | USCPJanuary-6-Timeline[25142] | 401, 403, 802 |
| 14 | gao-22-104829[25148] | Reserving Objection |
| 15 | MPD-001-00000034[25146] | Reserving Objection |
| 16 | DC-FirstAmendment | 401, 403 |
| 17 | USCPJan.6Timeline[25122] | 401, 403, 802 |
| 18 | Open source video of J6 2 | Reserving Objection |

---

[3] While the Government has located a file by the same name in global discovery, the defense has not provided its exhibits for the Government to confirm it is the same.

| Ex. No. | Description of Exhibit | Objection Under FRE |
|---|---|---|
| 19 | Open source video of J6 3 | Reserving Objection |
| 20 | Open source video of J6 4 | Reserving Objection |
| 21 | Open source video of J6 5 | Reserving Objection |
| 22 | Open source video of J6 6 | Reserving Objection |
| 23 | Open source video of J6 7 | Reserving Objection |
| 24 | 5 Demonstration Permits for J6 | 401, 403 |
| 25 | Crosstabs DC 011822[25099] | 401, 802, 901 |
| 26 | Pictures and Videos pertaining to #NWScaffoldCommander | 401, 403, 901 |
| 27 | Open Source Footage of Officer misconduct | 401, 403, 901 |
| 28 | Photos of protestor injuries | 401, 403, 901 |
| 29 | Officers Shooting at Protestors from Above | 401, 403, 901 |
| 30 | covering_riot_control_in_the_united_states_0 (1) | 401, 403, 802 |
| 31 | EO_17_002- BWCs: Serious Uses of Force, Serious Misconduct, and Critical or High-Profile Incidents | 401, 403, 802 |
| 32 | Tear_Gas_and_Pepper_Spray_Guide_ENGLISH | 401, 403, 802 |
| 33 | Impact_Munitions_Guide_ENGLISH | 401, 403, 802 |
| 34 | RiotID_Guide_ENGLISH | 401, 403, 802 |
| 35 | Letter from VP Pence | 401, 403, 802 |
| 36 | rubber bullets from above 2.mp4 | 401, 403, 901 |

| Ex. No. | Description of Exhibit | Objection Under FRE |
|---|---|---|
| 37 | Firing Rubber Bullets from above.mp4 | 401, 403, 901 |
| 38 | Trump Supporters Stop Anarchists from Breaking US Capitol Windows | 401, 403, 901 |
| 39 | Open Source Video Protestors 1 | Reserving Objection |
| 40 | Open Source Video Protestors 2 | Reserving Objection |
| 41 | Photos and Videos regarding Pipe Bomb Suspect | 401, 403 |
| 42 | Pictures and Videos pertaining to #redonredglasses | 401, 403, 901 |
| 43 | Open source video of J6 1 | Reserving Objection |
| 44 | Capitol Police Manuals | 401, 403, 901 |
| 45 | Capitol CCTV Footage | Reserving Objection |
| 46 | BWC Camera Footage | Reserving Objection |
| 47 | Montage of Protestor telling people to go to Capitol | 401, 403, 802, 901 |
| 48 | Videos from Bobby Powell | 401, 403, 802, 901 |

### III. Motion for an order requiring defense to produce proposed exhibits

Finally, because of the difficulty inherent in objecting to proposed trial exhibits that it has not seen, the government moves this Court to order defendant to produce copies of the exhibits listed in defense's proposed exhibit list to the government by December 8, 2023, so that any additional objections can be made in advance of the pre-trial conference scheduled for December 12, 2023.

          Respectfully Submitted,

          MATTHEW M. GRAVES
          United States Attorney
          DC Bar No. 481052

By:    */s/ John Oxenreiter*
          JOHN OXENREITER
          New York Bar Reg. No. 5511597
          Assistant United States Attorney
          U.S. Attorney's Office for the District of Columbia
          601 D Street NW
          Washington, DC 20530
          John.Oxenreiter@usdoj.gov
          (202) 252-7228

          MICHAEL L. BARCLAY
          New York Bar Reg. No. 5441423
          Assistant United States Attorney
          U.S. Attorney's Office for the District of Columbia
          601 D Street NW
          Washington, DC 20530
          Michael.Barclay@usdoj.gov
          (202) 252-7669