UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*Plaintiff,*

UNITED STATES OF AMERICA

v.  Case No. 1:23-cr-00108-TSC

MICHAEL JOHN DILLON,

*Defendant.*

# DEFENDANT'S SENTENCING MEMO

Defendant Michael John Dillon ("Dillon") by undersigned counsel, hereby submits to the Court her Sentencing Memorandum. Defendant respectfully requests a sentence of one (1) year probation, no fine, and no restitution. Dillon is a hard-working businessman. Although he suffers from multiple physical illnesses such as non-toxic multinodular goiter, celiac's disease, fatigue, dizziness and tendonitis, he does not resort to illegal means of income. He advertises his skills as a mechanic and carpenter. He offers his handy-man services to make an honest living. Probation is the presumed sentence for a first-time misdemeanor.

## INTRODUCTION AND OVERVIEW

In good faith, Mr. Dillon entered into plea negotiations, and accepted the government's plea offer. Mr. Dillon pled guilty to Count one of the information, charging him with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 USC § 1752(a)(1). In return, the government dropped the latter three counts of the information charging Dillon with Disorderly and Disruptive Conduct in a Restricted Building, Violent Entry and Disorderly Conduct in a Capitol Building, and Parading, Demonstrating, or Picketing in a Capitol Building.

Merely two weeks prior to sentencing, the government objects to the PSR, claiming that Mr. Dillon has not accepted responsibility for his conduct on January 6, 2021. Pleas are essentially contracts between prosecutors and defendants. If the prosecution reneges on a plea, the defendant may seek relief. Dillon is asking this court for relief. Bringing to this Court's attention that the Supreme Court has already held that plea deals are binding upon the government. *Santobello v. New York*, 404 U.S. 257 (1971).

In Dillon's case, the government points to two slight variations in Dillon's version of events—offered at either Dillon's change of plea hearing or at Dillon's "debrief" post-conviction interview—compared with the Statement of Offense. The government then objects to the PSR's recommendation of point reduction for acceptance of responsibility on grounds that Dillon's account invokes more mitigating circumstances than the government likes.

I. **THE GOVERNMENT APPEARS TO BE USING SO-CALLED "DEBRIEFING" OR "POST-PLEA INTERVIEW" AS A SORT OF PERJURY TRAP IN WHICH THE GOVERNMENT TESTS A DEFENDANT'S STATEMENTS LINE-BY-LINE AGAINST THE DEFENDANT'S STATEMENT OF OFFENSE. THIS IS NOT THE PURPOSE OF THESE DOCUMENTS AND PROCEEDINGS.**

The United States Sentencing Commission has stated that a guilty plea may provide some evidence of the defendant's acceptance of responsibility.[1] Dillon pled guilty to Entering and Remaining in a Restricted Building or Grounds. While the government has pointed to extrinsic statements by Dillon, they have nothing to do with his acceptance of responsibility for the charge he has pled guilty of. During the plea colloquy, that the government points to in their objection to a point reduction, Dillon admits, "I am guilty of going into the Capitol."

---

[1] See The Commentary to §3E1.1 captioned "Application Notes."

However, the government attempts to draw attention to irrelevant admissions by Dillon. To support their argument that Dillon has not taken responsibility for his actions, the government points to statements made by Dillon which concerned: his feeling around the event, how he entered the building, and his reasoning for being inside the building. To be clear, pleading guilty is a legal admission of guilty and an acceptance of responsibility for the alleged offense. The government is not charging Dillon based on what he said inside the building or how he entered the building. Dillon is charged with "knowingly enter[ing] or remain[ing] any restricted building or grounds without lawful authority to do so."[2] There is no piece of evidence to support responsibility than Dillon stating, "I am guilty into the Capitol."

## II.   CORRECTIONS TO DESCRIPTION OF THE PLEA AGREEMENT (PARAGRAPHS 6 AND 101)

The Government objects to the draft PSR's characterization of the relevant provisions of the plea agreement regarding acceptance of responsibility in paragraphs 6 and 101. In both paragraphs, the PSR does not indicate that the Government's agreement to acceptance of responsibility points were conditional (¶ 6: "The Government agrees a two-level reduction for acceptance of responsibility, pursuant to USSG §3E1.1 would be appropriate." and ¶ 101: "The Government agrees a two-level reduction for acceptance of responsibility, pursuant to USSG §3E1.1 would be appropriate."). The Plea Agreement (ECF No. 65) provides in full:

The Government agrees that a 2-level reduction will be appropriate, pursuant to U.S.S.G.

---

[2] 18 U.S.C. § 1752(a)(1).

§ 3E1.1, provided that your client clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through your client's allocution, adherence to every provision of this Agreement, and conduct between entry of the plea and imposition of sentence.

ECF No. 65 (Plea Agreement) at 3 (emphasis added).2 In other words, the Government's agreement to the two-point reduction was expressly conditional on Dillon's demonstration of acceptance of responsibility through his allocution and his post-plea conduct.

### III. IT IS WIDELY RECOGNIZED THAT STATEMENTS OF OFFENSE ARE NEGOTIATED STATEMENTS FOR PURPOSES OF ESTABLISHING PLEAS—NOT AFFIDAVITS OF TRUTH AGAINST WHICH A DEFENDANT'S OTHER REMARKS ARE TESTED.

No one in the criminal justice system—not judges, prosecutors or defense lawyers—regards statements in a negotiated Statement of Offense to be anything more than formalized recitations of compromise between the parties. See Brandon Garrett, "Why Plea Bargains Are Not Confessions," William & Mary Law Review 57, no. 4 (2016), 1415, 1428-1431. People can also plead guilty while simultaneously protesting their innocence—known as "Alford pleas," after the case of North Carolina v. Alford, 400 U.S. 25, 36 n.8 (1970) (accused agreed to plead guilty and accept the maximum sentence that could be imposed judicially—a term of 30 years' imprisonment—rather than face a jury trial, which had the option of imposing a death sentence; the court held that this was a valid choice among his options and that the plea was valid despite containing a statement that the person had not committed the crime to which he pled guilty),

Thus, a guilty plea and its associated factual agreements may or may not be consistent with the actual facts of a case. A murderer who plainly pre-planned a homicide by poisoning, for

example, might plead to manslaughter. A DUI or reckless driving allegation might be transformed into a parking violation. A violent bar fight assault might be described as disorderly conduct in plea statements. Literally no one proposes such plea documents are sworn affidavits of factual details.

According to to the Vera Institute of Justice, "Plea deals—which are entirely within the discretion of a prosecutor to offer (or accept)—typically include one or more of the following":

- the dismissal of one or more charges, and/or agreement to a conviction to a lesser offense (known as "charge bargaining");

- an agreement to a more lenient sentence, which can cover both type of sanction—custodial or community-based—and length (known as "sentence bargaining"); and

- an agreement to stipulate to a version of events that omits certain facts that would statutorily expose a person to harsher penalties (known as "fact bargaining").

Ram Subramanian, et al, "In the Shadows: A Review of the Research on Plea Bargaining," Vera Institute, September 202 https://www.vera.org/downloads/publications/in-the-shadows-plea-bargaining.pdf (accessed 4/27/2024).

Such "fact bargaining" is ubiquitous in federal and state criminal justice systems. Often, for example, a drug trafficking defendant will plead to a lesser quantity of drugs than he actually trafficked. And in theft cases, a plea deal might state that a defendant committed misdemeanor

theft—based on a lower dollar amount—than the dollar amount of actual thefts. Or vice versa. Wesley MacNeil Oliver, "*Toward a Common Law of Plea Bargaining,*" Kentucky Law Review 102, no. 1 (2013), 1, 31-37, https://perma.cc/TE94-LAJ5 (discussing the near limitless discretion prosecutors possess when making charging and plea bargaining decisions).

For this reason, statements made in a Statement of Offense are not statements of fact to be strictly construed or interpreted. And it is therefore ridiculous that the government seeks to compare some of Mr. Dillon's remarks elsewhere to Mr. Dillon's statement of offense in order to concoct a claim of nonacceptance of responsibility.

IV. **SENTENCING GUIDELINE SUPPORTS 0 TIME INCARCERATION**

The base offense level for 17 U.S.C. § 1752(a)(1) is four. There were zero victims who were directly harmed by Dillon's actions. He entered the capitol, remained there for five minutes, and left. He did not damage any property, nor physically harm any individuals during the extremely brief time Dillon was in the building. Dillon is a zero-point offender with no prior criminal history. After the victim related adjustment, acceptance of responsibility, and being a zero-point offender, the total offense level is 2. Per the United States Sentencing Table, an offense level of 2 with a. criminal history of 0 points, a sentence of 0 months of incarceration is appropriate.

It would not be appropriate to remove the 2-point reduction for acceptance of responsibility. Cases that have not accounted for offense-level reduction for acceptance of responsibility where the defendant attempted to withdraw his guilty plea and claimed that he was not responsible, *United States v. Berkeley*, 567 F.3d 703 (D.C. Cir. 2009); defendant denied his role and participation in the events that supported the charge against him, *United States v. Leyva,* 916 F.3d 14 (D.C. Cir. 2019); defendant did not provide the necessary documents that were a

part of his plea, *United States v. Ransom,* 756 F.3d 770 (D.C. Cir. 2014); defendant continually lied for months to government officials before agreeing to cooperate in exchange for a sentencing benefit, *United States v. Rodriguez,* 676 F.3d 183 (D.C. Cir. 2012).

Dillon has cooperated and complied with all Court ordered conditions of his release since February 21, 2023. At no time has Dillon lied or denied that he entered the capitol building. Dillon is unalike the defendants listed above, where the court withheld from giving a two-point reduction for acceptance of responsibility.

Dated: May 9, 2024                                        Respectfully Submitted,

/s/ *John M. Pierce*
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (662) 665-1061
Email: jpierce@johnpiercelaw.com
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I, John M. Pierce, hereby certify that on this day, May 9, 2024, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

<u>/s/ John M. Pierce</u>
John M. Pierce